## T. M. Smedes *v.* Ilsley, Doubleday & Co.

1. Judgment of another State. *Conclusiveness. Injunction.*

   Jurisdiction of the person being acquired, a judgment in another state based on a note is conclusive of plaintiff's title thereto and the right of recovery. Suit on such judgment in this state will not be enjoined on the ground that the note was without consideration, and that, because of fraud, plaintiffs never in fact owned the same.

2. Same. *Suit for benefit of third person.*

   Nor is it ground for injunction that suit on the judgment, though in plaintiffs' name, is really for the benefit of a third person who is insolvent and largely indebted to the defendant. Plaintiffs' title to the note being conclusively adjudicated in their favor, they may sue on the judgment for whomsoever they please.

From the chancery court of Warren county.

Hon. Claude Pintard, Chancellor.

On November 5, 1888, the appellant, Thomas M. Smedes, of Vicksburg, Miss., executed to B. F. Watkins his promissory note for $500, payable to said Watkins at a bank in Vicksburg, Miss., ninety days after date. On the 11th of February, 1889, appellees, Ilsley, Doubleday & Co., of New York city, brought suit on said nóte in the city court of New York against Smedes, a citizen of Vicksburg, Miss., who was summoned by publication. The complaint, which was sworn to, alleged that the plaintiffs were the holders of said note by indorsement. The defendant, Smedes, appeared and defended the suit. The answer was sworn to by him. Among other things, he set up therein that the plaintiffs were not lawful holders of said note; that they had obtained it through fraud of the said Watkins, and in violation of a written agreement made by him with defendant, and that plaintiffs had entered into a scheme with said Watkins and one Harrison to unlawfully exact the payment of said note from defendant. Issue being joined, there was a trial May 20, 1889, resulting in a judgment in favor of plaintiffs for $516 and costs. The defendant appealed, and on the 1st day of November, 1889, at the general term of the city court of New York, the judgment was affirmed, with damages and costs.

Plaintiffs then instituted suit on said judgment against the defendant, Smedes, in the circuit court of Warren county, Miss. On the 20th day of November, 1890, Smedes filed a bill in this case, and obtained a temporary injunction of said suit in the circuit court. Ilsley, Doubleday & Co., B. F. Watkins and Robert L. Harrison, all non-residents, were made parties defendant.

In his bill and amendment thereto the complainant, Smedes, alleged that on November 5, 1888, he entered into a contract with said Watkins, whereby Watkins agreed to satisfy a certain judgment against the American Cotton Seed Co., and to assign to complainant four notes of said company for $500 each, and to cause to be receipted a small account against the company ; that he, Smedes, agreed to execute to said Watkins his three notes dated November 5, 1888, one for $500 due at ninety days, one for $1250 due at twelve months, and one for $1750 due eighteen months after date— all payable at the Vicksburg Bank, Vicksburg, Miss.; that said notes were executed, and, as collateral security therefor, Smedes placed in the hands of Watkins 500 shares of the capital stock of said American Cotton Seed Co., the said Watkins agreeing to restore to him 225 shares of said stock upon the payment of the said note of $1250, and to restore the remaining 275 shares upon the payment of said note of $1750 ; that, in lieu of said note of the American Cotton Seed Co. and the said judgment and account, Watkins agreed to deliver to complainant 500 shares of the capital stock of said company ; that complainant agreed, upon receipt of the same, to surrender them to the company ; that upon presentation of complainant's first note for $500, he declined to pay it, because he had been advised that said Watkins had fraudulently transferred the said shares attached to said notes as collateral security to said Harrison, who fraudulently pretended to have purchased said collaterals ; that said Ilsley, Doubleday & Co. fraudulently pretended that they were the purchasers of said $500 note, and in the suit thereon in New York, had falsely sworn that they were the owners thereof ; that the said Ilsley, Doubleday & Co., Harrison and Watkins were intimate friends, and entered into an " unlawful, deliberate, and corrupt conspiracy to defraud and cheat complainant ;"

that in said suit in New York judgment was rendered May 20, 1889 ; that complainant, although advised of the fraudulent transfer of said collaterals, yet, as the 225 shares were not to be delivered to him until November, 1889, on maturity of the second note, he could not in said suit aver or prove that said . Watkins would fraudulently fail and refuse to append said collaterals to, or surrender them with said second note in accordance with his agreement ; that it was not until five months after the rendition of said judgment in New York, that complainant definitely ascertained that said Watkins really intended to defraud him of said collaterals, and therefore he could not rely upon or plead the facts as to this in said suit ; that said Watkins is insolvent, and has no visible property either in this state or New York ; that he is indebted to complainant in the sum of about $9000, and is in Europe where he has been for two years.

The bill further alleged that when the second note became due and was presented to complainant for payment, the original certificate for 225 shares was not appended, but, instead thereof, there was appended a fraudulent and worthless certificate of stock in the name of one Peters, and, upon discovering this, complainant declined to pay said note.

Complainant further alleged that he had complied with his agreement in every respect, but that he had not paid said notes for the reasons above stated.

It was further alleged that the suit in the circuit court of Warren county, though in the name of Ilsley, Doubleday & Co., was being prosecuted for the sole use and benefit of the said Watkins.

The prayer of the bill was for the cancellation of the judgment obtained in New York, and for a perpetual injunction of the suit based thereon. A motion was made by defendants, Ilsley, Doubleday & Co., to dissolve the injunction upon the ground that the bill showed that the complainant was concluded by the judgment rendered in New York. The motion was sustained. A demurrer was interposed to the bill by said defendants on substantially the same ground. It was also sustained and the bill was dismissed as to them. Complainant appeals. An authenticated transcript of

the proceedings and judgments of the New York courts is made a part of the record.

*Miller, Smith & Hirsh*, for appellant.

If the averments of the bill do not entitle complainant to relief, it is difficult to perceive for what purpose a court of chancery is constituted. The defendants, by their demurrer and motion to dissolve, admit the facts alleged, and that there was a deliberate conspiracy to defraud complainant. It is also admitted that the suit in the circuit court is being prosecuted for the benefit of Watkins, a non-resident, who is wholly insolvent and largely indebted to Smedes. Watkins then is the real plaintiff in the suit, and, it is admitted that he robbed Smedes of his stock and was a confederate in the scheme to defraud Smedes by the substitution of worthless stock when the second note was presented. Even the courts of chancery have heretofore felt powerless to redress such injuries as this, yet, in this enlightened age when *rights* are superior to *remedies*, a precedent should be unhesitatingly established for the prevention of the wrong exposed by these confessions. Pom. Eq. Jur. § 59.

The jurisdiction here is maintainable upon several distinct and well-defined grounds :—

1. The avoidance of transactions on the ground of *fraud* is a copious source of jurisdiction in equity. Adams Eq. § 176.

2. The remedy by *specific performance* is applicable. Pom. Eq. Jur. § 1401.

3. The delivery of the stock and the execution of the agreement created a *trust*, which a court of equity will enforce. Pom. Eq. Jur. § 1402, note 1.

4. It is shown that Watkins is not only *insolvent*, but he and all the other defendants are non-residents of the state, and no action at law could be maintained against them. On this point see High on Inj. §§ 243, 400, 1344, 1346. Insolvency may be made a factor in supporting a bill to make available a set-off under certain circumstances. *Desearn v. Babers*, 62 Miss. 421.

5. It is now the settled doctrine in equity that if, from the nature of the claim or situation of the parties, justice cannot be done

at law, chancery will allow a *set-off* not within the statute.   *Graves* v. *Hull,* 27 Miss. 419 ; 46 Ib. 710 ; High on Inj. § 244.

6. Owing to the *inadequacy of legal remedies,* equity will grant relief.   The New York court could not have decreed specific performance ; could not have adjusted the damages properly ; could not have adjudicated the rights of all the parties, and could not have restored them to their original status.   It could not have considered the circumstances that Watkins was insolvent, or that he was indebted to Smedes.

In the amendment complainant offered to show that at the time of the judgment, which was more than five months before the maturity of the second note, when the collaterals were to be delivered, he could not prove that the scheme of the defendant would be finally carried into execution.

(Counsel here cited authorities to show that the court below should have allowed the amendment proposed by complainant, but it is manifest from the opinion that the court considered the case as if the amendment had been made.   Therefore it is not deemed necessary to give the argument as to this.)

*R. V. Booth,* for appellees.

The judgment between the same parties in New York is *res judicata.*   Under the federal constitution, full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.   The judgment is conclusive of appellees' right to recover.   122 Mass. 156 ; 27 Ohio St. 600 ; 51 Mo. 69 ; 35 Ark. 331 ; *Wall* v. *Wall,* 28 Miss. 413 ; *Pearce* v. *Olney,* 20 Conn. 544 ; 3 Pom. Eq. Jur. § 1361 ; *Christmas* v. *Russell,* 5 Wall. 290 ; *Thompson* v. *Whitman,* 18 Ib. 457.

The judgment was necessarily an adjudication of the title of appellants to the note in suit.   In addition to the authorities above cited, see *Sims* v. *Talbot,* 27 Miss. 487.

*Warren Cowan,* on the same side.

1. Subject to the qualification that the judgments of courts in other states are open to inquiry as to jurisdiction, the judgments of such courts are conclusive in other states.   Constitution of the

United States, § 1, art. 4; 5 Wall. 290; 18 Ib. 460; 5 S. & M. 210; 8 Ib. 421; 10 Ib. 298; 27 Miss. 487, 744.

If the judgment had been rendered in this state, it could not be collaterally attacked for insufficient evidence to support it. *Hooker* v. *Yale*, 56 Miss. 197; 5 How. (Miss.) 110; 4 S. & M. 358; 63 Miss. 166.

2. A court of equity will not enjoin a judgment at law unless the complainant has an equitable defense of which he could not avail at law, or a defense which he was prevented from availing himself of by fraud or accident unmixed with negligence on his part. 7 Cranch (U. S.), 332; 17 How. (U. S.) 443; 20 How. 156; 20 Wall. 171; 94 U. S. 652; 95 Ib. 157; High on Inj. § 203; Lawson's Rights, Rem. & Pr. Vol. 7, §§ 3701, 3702.

Equity will not enjoin a threatened or pending suit at law to which there is a legal defense. 119 U. S. 226; 4 S. & M. 423; 11 Ib. 140; 52 Miss. 401; 55 Ib. 323; 62 Ib. 421; 63 Ib. 198; 3 Pom. Eq. Jur. § 1364.

Argued orally by *J. Hirsh,* for appellant, and *R. V. Booth* and *Warren Cowan,* for appellee.

CAMPBELL, C. J., delivered the opinion of the court.

Upon the facts stated in the bill and the amendment proposed, the appellant could not successfully defend an action upon the note itself, if it appeared that the appellees became owners of it as conclusively adjudicated in their favor by the judgment recovered in New York. If theirs, they may maintain an action for whomsoever they please, and the averment of the bill on that subject constitutes no ground for injunction.

*Affirmed.*